THE COLORADO SPRINGS CO. *v.* HEWITT.

1. A motion to set aside a default must be supported by an affidavit and be
   made of the term at which the judgment is entered.
2. In case of default the proper practice is to swear the jury " to assess the
   plaintiff's damages," not " to try the issues."

3. Upon judgment by default in the probate court when the damages do not rest in computation, the writ of inquiry should be issued according to the practice of the district court, and the inquisition should be by a jury of twelve men.

*Error to Probate Court of El Paso County.*

THIS was an action on the case brought by Hewitt, the appellee, against the Colorado Springs Company, and judgment taken by default. A motion to set aside the default was overruled.

Messrs. DAVIDSON & HARRISON, for plaintiff in error.

Messrs. HOLLINGSWORTH & DANFORD, for defendant in error.

ELBERT, J. The motion to set aside the default was not of the term at which the judgment was entered, nor was it supported by affidavit, and was properly overruled. R. S., § 16, p. 506.

The proper practice would have been to swear the jury "to assess the plaintiffs' damages" and not to "try the issues," but we are not prepared to say that this irregularity is sufficient ground for reversal.

At common law, upon judgment by default, a writ of inquiry was necessary, and issued to ascertain the damages of the plaintiff.

This mode of procedure was modified and adopted by section 15 of the Practice Act, R. S. 506, as the practice of the district courts of the late Territory.

By section 28 of the Probate Act (R. S. 526), the rule of practice and proceedings, prescribed by law for the government of the district courts, were prescribed also for the government of the probate courts, which were clothed with common law jurisdiction by act of March 3d, A. D. 1863.

Considered with reference to these provisions, upon judgment by default in a suit pending in a probate court, where the damages did not rest in computation, a writ of inquiry according to the practice of the district courts was, without

question, the proper mode of procedure. A question is made, however, in view of other statutory provisions. Section 32 of the Probate Act, R. S. 527, provides that no grand or petit jury shall be summoned to attend the terms of the probate court, but if either party shall demand a jury, a jury shall be summoned as in cases before a justice of the peace.

Section 25 of the Justices' Act, R. S. 401, provides for a jury of six, or twelve, if a less number be objected to. It is claimed that in virtue of these provisions the inquisition, in case of judgment by default in the probate court, may be by a jury of six. We do not think such a view authorized. The manifest object of section 32 is to provide for a jury to perform the duties of a regular panel, to wit: the trial of issues. There is evidence of this in the form of the writ, which is prescribed by the statute, and runs as follows: "To make a jury between said parties in a plea of——, because as well the said plaintiff as the said defendant have put themselves upon the country for trial." At common law a jury summoned by writ of inquiry in case of default had no necessary connection with the regular panel. Did they serve on or constitute it in part or whole, it was in virtue of the writ of inquiry, and not in their character as regular jurors.

Judgment by default is incomplete: the *right* of the plaintiff to recover is established, but the quantum of damages sustained by him is not determined, hence the judgment at common law was "that the plaintiff ought to recover his damages, but because the court knew not what damages the said plaintiff hath sustained, therefore the sheriff is commanded that by the oaths of twelve honest and lawful men, he inquire into the said damages and return such inquisition into court." 2 Black. Com. 398.* The writ employed the same language and was a mere warrant to the sheriff to assess damages, and was the equivalent of a rule for the clerk to assess where they lay in computation. *Cook* v. *Tuttle*, 2 Wend. 289.

The sheriff presided at the inquisition, but his authority

was ministerial and not judicial. *Tilletson* v. *Cheatham*, 2 Johns. 270. It could be executed before his deputy as well. Tidd's Pr. 575.

The finding was intended merely to inform the conscience of the court. *Ward* v. *Haight*, 3 Johns. Cas. 80. It could be executed at any place in the county, 2 Ld. Ray. 1449, and after the regular panel had been discharged. *Ætna Insurance Co.* v. *Phillips*, 27 Ill. 71.

In cases of legal difficulty it could be executed before the judge, who presided in the place of the sheriff, and certified the inquisition. *Ellsworth* v. *Thompson*, 13 Wend. 658. The jurors could not be challenged, "because," in the language of the case in 3 Salk. 81, "this is only an inquest of office," but the sheriff in his discretion might admit the challenge.

This summary of rules, modified perhaps in some particulars by modern practice, shows the distinct and individual character of the proceeding: That while the inquisition was at common law subject in many respects to the same laws and conditions as a trial by jury at *nisi prius*, it was in its writ, its object, its presiding officer, its place of meeting, and its mode of procedure a distinct and separate proceeding, with a well-defined practice. Having been adopted into and made a part of the practice of the district courts by designation, and made applicable to the practice of the probate court by the provisions of section 28 of the Probate Act, we cannot hold it changed in an essential feature by intendment. *Jones* v. *Stevens*, 1 Col. 67; *Davis* v. *Bangor*, etc., *Railroad Co.*, 60 Me. 303; *Jennings* v. *Asten*, 5 Duer, 696.

This inquisition should have been by a jury of twelve men, according to the practice of the district court.

The judgment is reversed with costs, and the cause remanded that proceedings may be had on the judgment by default according to law.

*Reversed.*