(84 South. 803)

Ex parte JOHNSON. (5 Div. 739.)

(Supreme Court of Alabama. Dec. 4, 1919. Response to Application for Rehearing Jan. 1, 1920.)

1. JUDGES ☞2—CIRCUIT JUDGE OF COUNTY COULD NOT BE LEGISLATED OUT OF OFFICE BY RECIRCUITING BILL.

The circuit court being a constitutional court, and the office of judge thereof being a constitutional one (Const. 1901, §§ 179, 142, 144), the circuit judge of a county whose term of office had not yet expired could not be legislated out of office by any provision of a recircuiting bill contrary to section 155.

2. COURTS ☞43—LEGISLATURE HAD AUTHORITY TO CHANGE COUNTY CIRCUIT AND MERGE IT WITH JUDICIAL CIRCUIT.

Under Const. 1901, § 155, the Legislature had authority to change the Lee county circuit and to merge it with the Fifth judicial circuit by Recircuiting Act Sept. 30, 1919.

3. CONSTITUTIONAL LAW ☞48 — PRESUMPTION LEGISLATURE HAD CONSTITUTIONAL LIMITATION IN MIND.

It will be presumed that the Legislature, at the time of enactment of a statute, had in mind a constitutional limitation on their authority in the premises.

4. CONSTITUTIONAL LAW ☞48 — STATUTE SHOULD BE CONSTRUED IN FAVOR OF CONSTITUTIONALITY.

If the language which the Legislature has used in a statute is susceptible of a fair construction leading to the validity of the act, such construction should be given.

5. JUDGES ☞2—RECIRCUITING ACT NOT UNCONSTITUTIONAL AS DEPOSING CIRCUIT JUDGE OF LEE COUNTY.

Recircuiting Act Sept. 30, 1919, *held* not unconstitutional, as deposing the judge of the Lee county circuit prior to expiration of his term of office, contrary to Const. 1901, § 155, having intended that the judge for such circuit, on merger of his circuit with the Fifth judicial circuit, should become associate judge of such judicial circuit.

6. JUDGES ☞2—JUDGE DEPRIVED OF NO CONSTITUTIONAL PRIVILEGES BY RECIRCUITING ACT.

The fact that the Legislature has designated the judge of the Fifth judicial circuit, as it existed before the passage of the Recircuiting Act Sept. 30, 1919, making the circuit judge of Lee county an associate judge of the Fifth Judicial circuit, as the presiding judge of such judicial circuit, contravenes no constitutional provision, and deprives the judge of the Lee county circuit court of no privileges guaranteed by organic law.

7. JUDGES ☞2—LEGISLATURE WITHOUT AUTHORITY TO PROVIDE JUDGE FOR JUDICIAL CIRCUIT EXECUTED.

Under Const. 1901, § 159, Legislature *held* without authority, by Recircuiting Act Sept. 30, 1919, to name or provide a judge for a

judicial circuit thereby created; such authority being vested in the Governor.

8. STATUTES ⊕═124(4) — RECIRCUITING ACT SUFFICIENTLY STATES SUBJECT IN TITLE.

Recircuiting Act Sept. 30, 1919, abolishing the Lee county circuit and assigning its judge as assistant justice of the Fifth judicial circuit, in which the Lee county circuit is merged, *held* not violative of Const. 1901, § 45, in that its subject is not sufficiently and clearly stated in its title.

9. JUDGES ⊕═8—RECIRCUITING ACT UNCONSTITUTIONAL IN EXTENSION OF TERMS OF GOVERNOR'S APPOINTEES.

Recircuiting Act Sept. 30, 1919, in its extension until 1922 of the terms of appointees of the Governor to judicial vacancies, *held* violative of Const. 1901, §§ 158, 159.

·10. STATUTES ⊕═64(1)—SEPARABLE PART OF ACT DOES NOT AFFECT REMAINDER.

A separate provision of a statute does not affect the validity of the remainder.

11. PROHIBITION ⊕═1—WRIT ALLOWED ONLY WHEN NECESSARY TO GIVE SUPERINTENDENCE OF INFERIOR JURISDICTION.

Writ of prohibition is only to be allowed when its issuance is necessary to give a general superintendence and control of an inferior jurisdiction, and is never to be resorted to except in cases of usurpation and abuse of power, and not then unless other remedies are ineffectual.

12. PROHIBITION ⊕═11 — MISDESCRIPTION OF SELF BY JUDGE NOT GROUND FOR WRIT.

Where respondent to application for writ of prohibition is still circuit judge of Lee county despite the Recircuiting Act Sept. 30, 1919, and as such has right and authority to hear and determine petitioner's cause, the writ will not issue against him, though he has styled himself incorrectly.

Response to Application for Rehearing.

13. COURTS ⊕═42(1)—RECIRCUITING ACT ·NOT INVALID ON GROUND ONLY ONE JUDGE CAN BE ASSIGNED TO CIRCUIT.

Recircuiting Act Sept. 30, 1919, merging the Lee county circuit in the Fifth judicial circuit, and making the circuit judge of such county associate judge of the Fifth judicial circuit, *held* not violative of Const. § 142, on the ground that there can be only one circuit judge assigned to a circuit.

Petition by Sallie Johnson for writ of prohibition against Hon. Lum Duke, individually and as Judge of the Lee Circuit Court. Writ denied.

Petition by Sallie Johnson for a writ of prohibition to be directed to Hon. Lum Duke, individually and as judge of the Lee circuit, to restrain him from holding said court in accordance with the order set out in the petition, and from hearing and determining that

certain cause of the State v. Johnson, pending in the circuit court of Lee county. The petition sets up that in July, 1919, the grand jury of Lee circuit court returned an indictment against Sallie Johnson for a misdemeanor, which indictment is now pending in said court.

The petition shows that in 1916 Hon. Lum Duke was duly elected judge of the Lee circuit court, which at the time was one of the judicial circuits of the state, composed of Lee county; and that he was duly commissioned and qualified as such judge prior to ·September 30, 1919.

It is further shown that, by an act of the Legislature approved September 30, 1919 (Acts 1919, p. 858), Lee circuit, composed of Lee county, was abolished, and Lee county placed in the Fifth judicial circuit and made a part thereof; that the Fifth judicial circuit, as constituted under said act, is composed of five counties, including Lee; and that the judge of said circuit, as the same existed before September 30, .1919, is by said act made presiding judge of the Fifth judicial circuit, Lee county no longer constituting a circuit of one county, and that the judge of the Lee circuit no longer has jurisdiction, as judge of said Lee circuit, to hear and determine misdemeanor cases in which the defendants are in custody in Lee county. It is further averred that Hon. Lum Duke, as judge of the Lee circuit court, on October 30, 1919, issued an order, convening said court for the trial of nonjury criminal cases; that said court convenes November 17, 1919; and that said order has been made by him without authority or instructions from the presiding judge of the Fifth judicial circuit or from the Chief Justice of the Supreme Court; that petitioner's case is a nonjury criminal case, and has been set down for hearing on said date; and, further, that petitioner has protested to said judge against said cause being set down for trial, but that Hon. Lum Duke claims to have authority to issue said order and to hold said court and try the cause, and, unless restrained from doing so, will proceed and try the same; that Hon. Lum Duke claims the act of September 30, 1919, is unconstitutional and void, and that Lee circuit still exists, and as judge of said Lee circuit he has jurisdiction.

The answer sets up the unconstitutionality of the above-cited act in justification of the order, and many grounds of objection are enumerated therein.

Dickinson & Dickinson, of Opelika, for petitioner. Judge Duke, as judge of the Fifteenth judicial circuit, cannot, as judge of the Lee judicial circuit, call and hold a term of that court. Prohibition is the proper remedy. 51 Ala. 41. The act is constitutional. 51 Ala. 368.

N. D. Denson & Sons, Barnes & Walker, T. D. Samford, Smith & Watkins, George P. Harrison, E. H. Glenn, Jr., and E. A. Burke, all of Opelika, for respondent. The redistricting act is unconstitutional for the following reasons: (1) The office of circuit judge is not statutory, but constitutional, and the right of the judge to hold office for the full term cannot be abridged by the Legislature. Sections 139, 142, and 155, Constitution 1901; 23 Cyc. 507; 45 Ala. 103; 51 Ala. 42; 118 Ala. 1, 24 South. 89; 173 Ala. 453, 56 South. 211; 101 Ind. 223; 10 Ind. 99; 9 Ark. 270; 86 Tenn. 485, 7 S. W. 453; 102 Tenn. 509, 53 S. W. 134, 46 L. R. A. 589. The office cannot be abolished by the Legislature, either directly or by abolishing his district or circuit, nor by devolving his duties upon another. Sections 155, 173, 174, Const. 1901; 12 A. & E. Ency. Law, 18, 19; 45 Ala. 103; 51 Ala. 42; Cooley, Const. Lim. 177 et seq.; 62 Pa. 343; 23 Cyc. 507, 508; 23 Ill. 547; 14 Wis. 163; 135 Ind. 119, 34 N. E. 872, 21 L. R. A. 634, and authorities cited supra. The act contains more than one subject not clearly expressed in the title. 75 Ala. 533; 106 Ala. 501, 17 South. 721; 118 Ala. 1, 24 South. 89. Section 171 of the Constitution cannot save the act.

Steiner, Crum & Weil, of Montgomery, C. W. Allen, of Ashland, Hugh M. Caffey, Jr., of Brewton, C. W. Hare, of Tuskegee, Lackey & Glass, of Ashland, Leeper, Haynes & Wallace, of Columbiana, and E. S. Thigpen, of Brewton, as amici curiæ, by permission of the court. Prohibition is not the proper remedy. High, Extra. Legal Rem. § 770; 60 Ala. 654; 187 Ala. 431, 65 South. 788; 32 Cyc. 613, par. D. The act is clearly constitutional. 195 Ala. 110, 70 South. 905. The right to rearrange circuits is settled. 82 Ala. 525, 2 South. 140; 199 Ala. 321, 74 South. 387; 23 Ill. 547; 30 Ark. 566; 55 Kan. 751, 42 Pac. 366, 30 L. R. A. 149. (62 Pa. 343; 135 Ind. 119, 34 N. E. 872, 21 L. R. A. 634; 23 Ill. 547, are not followed.) See, also, 102 Tenn. 509, 53 S. W. 134; 65 Miss. 410, 4 South. 96. The presumption is always that an act is constitutional, casting the burden upon the attacker to demonstrate that it is not. 124 Ala. 252, 27 South. 425; 156 Ala. 645, 47 South. 126. There is no limit on the powers of the Legislature, except the state and federal Constitutions. 34 Ala. 236. The act must be construed in pari materia. 180 Ala. 473, 61 South. 597; 164 Ala. 529, 51 South. 159.

GARDNER, J. By this proceeding the parties to this litigation seek to test the constitutionality of an act of the Legislature approved September 30, 1919, known as the "Recircuiting Act."

Due to the fact that the question is one of such great importance to the public and of state-wide interest, we pass for the present the question as to whether or not a proper case is shown for the issuance of the writ of prohibition, and enter at once into a consideration of the several attacks made upon the validity of this act, reserving for the close our conclusion as to the remedy.

Counsel for appellant rest their contention for the striking down of this act largely upon two principal points, either of which, it is insisted, would be fatal to its validity. We will consider them in the order of their presentation in brief.

[1] It is first contended that what is known as the Lee circuit has been abolished by this act, and the judge thereof deposed prior to the expiration of his term of office, contrary to section 155 of the Constitution of 1901. This section of the Constitution provides, among other things, that the term of circuit judges shall be six years, and that the right of such judge to hold office for the whole term shall not be affected by any change made by law in any circuit, or in the mode or time of election. Sections 173 and 174 of the Constitution provide the manner by which circuit judges may be removed from office. The circuit court is a constitutional court, and the office of judge thereof is a constitutional one (sections 179, 142–144; State ex rel. Winter v. Sayre, 118 Ala. 1, 24 South. 89), and we are of the opinion that under the foregoing constitutional provisions the circuit judge of Lee county, whose term of office had not yet expired, could not be legislated out of office by any provision of a recircuiting bill. The question therefore arises as to whether or not this has been done or attempted.

In Smith v. Stiles, 195 Ala. 107, 70 South. 905, it was shown that the county of Lee was detached from the Third judicial circuit in 1907, and a law and equity court, with the jurisdiction of the circuit and chancery court, established. It was there held that the act of August 16, 1915 (Laws 1915, p. 279), known as the "Consolidated Court Law," providing a circuit court in each county in the state, merely converted the Lee law and equity court into a circuit court; and, as the county had been detached, there was created a distinct subdivision of the state for court purposes. The act of detachment automatically and by necessary implication made it a circuit to all intents and purposes. The effect of the act as to Lee county was merely to change the name from the Lee law and equity court to the Lee circuit court, the court saying:

"They did not have to be numbered or even named, if otherwise * * * designated, and the act plainly provides for a circuit court in Lee and Marengo counties, which had already been * * * set apart to themselves, and if it is necessary to name them, as a mere matter of form, they can be known as the Lee coun-

ty circuit and the Marengo county circuit, as that is what they are to all intents and purposes." '

It is therefore seen no great importance was attached to the mere name of the circuit, designated for convenience in the opinion as the Lee county circuit.

[2] It can hardly be seriously questioned that the Legislature had authority to change the Lee county circuit and merge it with the Fifth judicial circuit. Section 155, Const. 1901; Ex parte Roundtree, 51 Ala. 42; State v. Black, 74 South. 387.[1] Indeed, the provision of section 155 of the Constitution that the right of the judge to his full term shall not be affected by any change made in any circuit necessarily implies that changes in the circuits were authorized and were to be anticipated; the inhibition being against a disturbance of the term of the judge before its expiration. This merger is accomplished by section 2 of the act, which reads as follows:

"That the Lee circuit composed of Lee county be, and the same is hereby abolished as a separate and distinct circuit, and the same is hereby merged and consolidated with the Fifth judicial circuit and is made a part thereof."

It is argued that, in order to make this valid, the act should have postponed the time for its effectiveness until the expiration of the term of the judge of said Lee circuit, the purpose of the postponement being the preservation of the judicial term, as the provision of our Constitution, and the authorities hereinafter cited show that the paramount consideration in such questions is the independence of the judiciary.

The remaining question therefore is, Does the act abolish the office of the respondent? Sections 3 and 4 are as follows:

"Sec. 3. That the present judge of the Fifth judicial circuit as now constituted shall be the presiding judge of the Fifth circuit as provided for under the provisions of this act.

"Sec. 4. That upon the passage and approval of this act thereafter and up to the general election in 1922, the solicitor of the Fifth circuit, before consolidation, shall prosecute in criminal cases in the counties of Chambers, Macon, Randolph, and Tallapoosa, and the solicitor of the Lee circuit, before consolidation, shall prosecute in criminal cases in the counties of Lee, and in such other counties and territories as he may be directed by the Attorney General. That at the general election of 1922, there shall be elected only one judge and one solicitor for the Fifth judicial circuit, as defined by this act."

The words "presiding judge," used in section 3 of this act, have, when taken in connection with the language of section 4, a well-understood meaning in this state. By legislative enactment, in those counties hav-

ing more than one circuit judge, provision is made for a presiding judge, and the others are known as associate judges. We speak of situations presented in cities like Birmingham, Mobile, and Montgomery. The words "presiding judge" as used in section 3 of the act would have no sensible meaning unless intended in the connection just stated. But any doubt that might exist in reference to that question is, we think, eliminated by the concluding sentence of section 4, to the effect that in the general election of 1922 there shall be elected only one judge and one solicitor for the Fifth judicial circuit, as defined by this act. This language in connection with section 3, we think, clearly shows a legislative intent that there should be two judges after the consolidation for the Fifth judicial circuit, one of whom shall be designated as the presiding judge of said circuit.

We are reminded by counsel that section 3 of the bill as originally drawn provided the presiding judge of the Fifth judicial circuit and of Lee circuit should agree as to who should be the presiding judge of the consolidated circuit, and in the event of their failure to reach such agreement within 30 days, the Chief Justice of the Supreme Court should thereupon designate, as between them, the presiding judge; and that the bill was amended by the substitution of section 3 as now appears in the bill, as above set out. It is argued that this action of the Legislature demonstrates the error of the conclusion we have here reached. We do not agree with this insistence, however, but are of the opinion that if this action is to be looked to, it is to be interpreted, when construed with the other provisions of the act, as merely indicating a purpose on the part of the Legislature not to leave the selection of the presiding judge to agreement among themselves or appointment by the Chief Justice, but to designate in the act who should be presiding judge, and therefore lay that question at rest.

The solicitor of the Lee county circuit court is also very clearly retained in office for the balance of his term, as the act expressly provides the duties he is to perform.

[3, 4] It will be presumed that the Legislature had in mind at the time of the enactment of this law that they were without constitutional authority to deprive the judge of his office. If the language which the Legislature has used is susceptible of a fair construction, leading to the validity of the act, then that construction should be given and the act upheld. Quartlebaum v. State, 79 Ala. 1. For it is the duty of the court not to strike down a legislative act as being contrary to the Constitution, unless convinced to that end beyond a reasonable doubt. State ex rel., etc., v. Smith, 187 Ala. 411, 65 South. 942.

---

[1] 199 Ala. 321.

We have examined with interest the following cases stressed in argument of counsel: People ex rel. Ballou v. Du Bois, 23 Ill. 547; State v. Messmore, 14 Wis. 163; State v. Friedley, 135 Ind. 119, 34 N. E. 872, 21 L. R. A. 634; Commonwealth v. Gamble, 62 Pa. 343, 1 Am. Rep. 422; McCully v. State, 102 Tenn. 509, 53 S. W. 134, 46 L. R. A. 567; State v. Leonard, 86 Tenn. 485, 7 S. W. 453; Price v. Amerson, 65 Miss. 410, 4 South. 96; Aikman v. Edwards, 55 Kan. 751, 42 Pac. 366, 30 L. R. A. 149. The cases deal largely with the authority of the Legislature to abolish the office by destroying the circuit, or otherwise depriving the judge of his position—to which he was elected—before the expiration of his term. As this is readily conceded as being beyond the legislative authority under our Constitution, these authorities are without value here; and the only question for determination is whether or not this has been attempted to be done.

[5] We are of the opinion that the language of the act is to be properly construed as intending that the judge who had theretofore been the circuit judge for Lee county—denominated in the opinion of Smith v. Stiles, supra, as the Lee county circuit—should, upon the merger of that separate circuit with the Fifth judicial circuit, become associate judge of the Fifth judicial circuit, and we so hold. The Lee county circuit is abolished as a separate circuit and merged with the Fifth judicial circuit, but there is still a Lee county circuit court, and the judge who was previously judge of the Lee county circuit court is still one of the judges of said court, with authority to hear and determine causes therein. True his territory, by the merger, has been extended, but he still has his old jurisdiction, which is now added to the new. He is a circuit judge now just as he was before, and will so continue until the expiration of his term of office. He need not be issued a new commission. He is one of the circuit judges of the state, and, were it necessary that he should be named, we think it clearly appears he was intended to be called the associate judge of the Fifth judicial circuit. Had the Legislature in recircuiting the state added an additional county to the Lee circuit, and named it the Sixth judicial circuit, could it be said this contravened any constitutional provision? We think not. Here all that is sought to be done is to combine the territory heretofore constituting the Fifth circuit and Lee circuit, which is to be known as the Fifth judicial circuit, with full protection both to the judge and solicitor of the Lee circuit until the expiration of their respective terms. This, in our opinion, violates no provision of our organic law.

Some argument is devoted to section 171 of the Constitution, but the foregoing conclusion is reached without any considera-

tion of said section, and therefore it needs no further reference here.

[6] The fact that the Legislature has designated the judge of the Fifth judicial circuit, as it existed before the passage of this act, as the presiding judge contravenes no provision of the Constitution, nor, so far as we can see, deprives the judge of the Lee circuit of any privileges guaranteed thereby. State v. Black, supra.

It is next insisted that a new circuit has been created, known as the Nineteenth circuit, composed of the counties of Autauga, Chilton, and Elmore, without any provision being made for a judge therefor; and that, as a circuit without a judge cannot exist, this provision is void. By the act approved September 29, 1919, it was provided that the supernumerary judge, in addition to his other duties, "shall perform the duties of circuit judge of the Nineteenth judicial circuit." It appears therefore that the Legislature was doubtless attempting, from an economic viewpoint, to provide a circuit judge for the new circuit—at least until the next general election.

[7] We are of the opinion that, under the authority of Ex parte Roundtree, 51 Ala. 42, the Legislature was without authority to so name or provide a judge for said circuit. The Nineteenth judicial circuit was composed of counties having no circuit judge or solicitor residing therein, and there can hardly be any question that it was a "new circuit" within the meaning of section 159 of the Constitution. This section provides:

"Whenever any new circuit * * * is created the judge * * * therefor shall be elected at the next general election for any state officer for a term to expire at the next general election for circuit judge: * * * provided, that if said new circuit * * * is created more than six months before such general election for any state officer, the Governor shall appoint some one as judge * * * to hold the office until such election."

Therefore, while the Legislature has failed to provide a judge for said circuit, yet it has created a new circuit; and the foregoing constitutional provision steps in and supplies the deficiency, making it mandatory upon the Governor (the new circuit having been created more than six months before a general election for a state officer) to appoint some one as judge of said circuit. The Constitution is self-executing in this respect, and came into force upon the approval of this act creating this new circuit. Nothing decided by the court in State ex rel. v. Porter, 1 Ala. 688, in our opinion, militates against any conclusion here reached; and it is also to be noted that section 159 of our present Constitution, which we hold directly applicable to this phase of the case, first appeared in the Constitution of 1901. We are therefore of the opinion that the vacancy as

to the judge of the Nineteenth judicial circuit is to be filled by appointment of the Governor under section 159 of the Constitution. Therefore this objection to the act also falls.

[8] It is further insisted in argument that the act contravenes section 45 of the Constitution, in that its subject is not sufficiently and clearly stated in its title. The title of the act is as follows:

"An act to divide the state into judicial circuits for the circuit court, to be numbered and composed of the counties named."

The argument as to this phase of the case is rested largely upon the assumption that, in the merger of the Lee county circuit with the Fifth judicial circuit, the judge of the Lee county circuit, as it formerly existed, is deprived of his office. As appears from the foregoing, such, in our opinion, is not the result, and therefore this insistence is without merit. Nor is the situation here presented at all analogous to that in the case of State ex rel. Leslie v. Bracken, 154 Ala. 151, 45 South. 841, cited by counsel. The following quotation from Ballentyne v. Wickersham, 75 Ala. 533, has found so frequent repetition in the books as to become familiar to all:

"That the title of a bill may be very general, and need not specify every clause in the statute. Sufficient if they are all referable, and cognate to the subject expressed. And when the subject is expressed in general terms, every thing which is necessary to make a complete enactment in regard to it, or which results as a complement of the thought contained in the general expression, is included in, and authorized by it."

See, also, State ex rel. Winter v. Sayre, 118 Ala. 1, 24 South. 89.

Tested by the foregoing rule, we think it requires no discussion to demonstrate that the title of the act here in question meets the requirements of section 45 of the Constitution.

[9, 10] We think it proper to note, in passing, a feature of the Recircuiting Act, which, in our judgment, clearly contravenes our Constitution, although it does not affect the validity of the act itself. We refer to those provisions in the law wherein the appointees of the Governor to the judicial vacancies have their terms extended until 1922. Section 158 of the Constitution provides that the appointee to judicial positions "shall hold * * * office until the next general election for any state officer held at least six months after the vacancy occurs, and until his successor is elected and qualified." Section 159, which is here more pertinent, provides that when a new circuit is created more than six months before the general election for any state officer, the Governor shall appoint some one to hold the office until such election. There will be an election

for state officers prior to 1922, and the provisions of this act, extending the terms of the appointees beyond the next general election, must be declared violative of the foregoing constitutional provision, and therefore void. This, however, as previously stated, does not affect the validity of the act, and this separate provision may be disregarded. The appointments being made, the Constitution then speaks and fixes the terms. We have thought it wise therefore, to save any future controversy in this respect, to state our conclusion as to this particular feature because of the public interest involved, although not necessary to a determination of the cause.

[11] For the purpose of a speedy determination of the question of the constitutionality and validity of the Recircuiting Bill, we have treated the case as if it presented a proper one for the issuance of a writ of prohibition. We are of the opinion, however, that the petition does not disclose sufficient facts to justify the issuance of the writ. Such a writ is only to be allowed when its issuance is necessary to give a general superintendence and control of an inferior jurisdiction, and is never to be resorted to except in cases of usurpation and abuse of power, and not then unless other remedies are ineffectual to meet the exigencies of the situation. Ex parte Hamilton, 51 Ala. 62; Goodwin v. McConnell, 187 Ala. 431, 65 South. 788.

[12] Under the construction which we have given the act, as above shown, the respondent is still circuit judge of Lee county, and as such has the right and authority to hear and determine petitioner's cause. Whether he has styled himself correctly matters not, for in cases of this character we must look to the substance rather than to the form.

There is some intimation in the petition that the order setting the cause down for hearing was an excess of authority on his part, as the same was done without instructions from the presiding judge of the Fifth judicial circuit or from the Chief Justice; but this does not suffice, as the petition does not show that for the validity of such proceeding the order of those judicial officers was necessary. But, on the contrary, there may exist a general understanding that respondent is to proceed and try the causes in Lee county as heretofore; and certainly this will be assumed in the absence of any showing to the contrary.

We therefore conclude that, notwithstanding our opinion that the act is valid, and not objectionable upon the constitutional grounds interposed, yet we think the petition fails to show a usurpation or abuse of power for which a writ of prohibition should issue.

The writ will therefore be denied.

Writ denied.

All the Justices concur.

Response to Application for Rehearing.

GARDNER, J. Upon application for rehearing, the argument is advanced that under section 142 of our Constitution there can be only one circuit judge assigned to a circuit; and our attention has been directed by counsel for respondent to the case of State v. Butler, 70 Fla. 102, 69 South. 771, which we have carefully considered. The Florida court was there but construing section 8 of article 5 of the Constitution of that state in connection with section 35 as amended, all of which differ materially from the provisions of our Constitution, and we do not consider that case as authoritative here.

[13] The question stressed upon this application was indirectly involved, but not directly treated by this court in State ex rel. Wilkinson v. Lane, 181 Ala. 646 (62 South. 31), and was briefed by counsel appearing amicus curiæ, as shown on page 649 of said report, and was directly presented and determined by the Arkansas court in State v. Martin, 60 Ark. 343, 30 S. W. 421, 28 L. R. A. 153, cited in the dissenting opinion of Justice Ellis in State v. Hilburn, 70 Fla. 55, 69 South. 784. We approve fully the holding in State v. Martin, supra, which is here directly in point, and consider the opinion in that case a complete answer to the contention of respondent's counsel upon this question.

As to the other matters argued by counsel for respondent upon their application, we content ourselves with what appears in the original opinion.

It results that the application for rehearing is overruled.